**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BOBBY KENNETH WILLIAMSON, : | |
| Petitioner, : | |
| v. : | No. 2:14-cv-05964 |
| DISTRICT ATTORNEY OF : | |
| PHILADELPHIA COUNTY; : | |
| THE ATTORNEY GENERAL OF : | |
| THE COMMONWEALTH OF PENNSYLVANIA; : | |
| and ERIC TICE, SUPERINTENDENT, : | |
| Respondents. : | |

**O P I N I O N**
Report and Recommendation, ECF No. 16 – Adopted

**Joseph F. Leeson, Jr.**                                                                   November 2, 2017
**United States District Judge**

### I.  INTRODUCTION

Bobby Williamson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for a murder committed in 1987 and requesting an evidentiary hearing. ECF No. 1. Magistrate Judge Elizabeth T. Hey issued a Report and Recommendation (R&R) recommending that the habeas corpus petition be dismissed as untimely and the request for an evidentiary hearing be denied. ECF No. 16. Williamson timely filed objections to the R&R, ECF No. 20, and later filed supplemental documents in support of his objections, ECF No. 21. After de novo review and for the reasons set forth below, the R&R is adopted, the habeas petition is dismissed as untimely, and the request for an evidentiary hearing is denied.

## II. FACTUAL AND PROCEDURAL HISTORY

The Court adopts the factual and procedural history as summarized by Magistrate Judge Hey in the R&R. In his Objections, Williamson takes issue with Magistrate Judge Hey's factual findings because she did not have access to the state court record at the time and based her findings on the parties' submissions and the state court dockets. Pet'r's Objs. 2. The Court later received the state court record, ECF Nos. 24-25, and, after independent review, concludes that Magistrate Judge Hey accurately summarized the facts and procedural history of this case.

## III. STANDARD OF REVIEW

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x. 142, 147 (3d Cir. 2016). The district court "may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C) (2009).

## IV. ANALYSIS

This Court has considered Williamson's Objections to the R&R and conducted a de novo review of his habeas corpus petition. After a tortuous path through the state courts involving five petitions under Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541-9551, Williamson filed his habeas petition on October 15, 2014, over seventeen years past

the expiration of the statute of limitations on April 23, 1997. Statutory tolling of the statute of limitations does not apply because Williamson's PCRA petitions were untimely, and thus cannot toll the limitations period. Equitable tolling does not stay the statute of limitations because Williamson did not diligently pursue his claims. Nor can Williamson avoid the statute through a gateway claim of actual innocence, because the 2012 affidavit of an alleged alibi witness he presents in support is not newly discovered evidence, and a reasonable jury could still have found him guilty, even in light of the affidavit. Therefore, the Court adopts Magistrate Judge Hey's conclusions in the R&R and dismisses Williamson's petition as untimely.

### A. Statute of Limitations

Magistrate Judge Hey correctly found that Williamson's conviction became final on February 11, 1995, as the Pennsylvania Superior Court recognized in its opinion reinstating Williamson's first PCRA petition. ECF No. 7-5, at 2. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year limitations period on habeas claims from the date that a conviction becomes final, but because Williamson's conviction became final before AEDPA's effective date on April 24, 1996, he had a one year "grace period" that extended his deadline to April 23, 1997. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998). Therefore, in the absence of tolling of the statute of limitations, Williamson's October 15, 2014 petition is over seventeen years late.

### B. Statutory Tolling

Statutory tolling does not apply because the Pennsylvania courts determined that all of Williamson's PCRA petitions were untimely. Under the AEDPA, a "properly filed" PCRA petition tolls the one-year statute of limitations during the period while it is pending before the state court. An untimely PCRA petition is not "properly filed" under the AEDPA, and does not

toll the limitations period. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Williamson filed five PCRA petitions, all of which were dismissed as untimely by the Pennsylvania courts. Magistrate Judge Hey correctly found that statutory tolling therefore does not apply.

Many of Williamson's objections argue that his PCRA petitions should be considered timely, or their untimeliness should be excused. For example, he complains that he did not receive a copy of the January 12, 1995 order dismissing his direct appeal, so he couldn't comply with the Pennsylvania appellate rules, and was abandoned by his direct appeal counsel, which led to a delay in seeking PCRA relief. Pet'r's Objs. 8. He contends that the prison mailroom failed to submit his Notice of Appeal of his fourth PCRA petition, and that the PCRA court's delay of two years in deciding his fifth PCRA petition forced him to file his habeas petition "before first exhausting that claim in state court." Pet'r's Objs. 6.

Williamson seems to confuse two different issues: the question before this court is not whether his PCRA petitions were timely, but whether his habeas corpus petition is. Williamson states that he "is accused of breaking the PCRA Statutory Deadline Rule," and contends that Magistrate Judge Hey concluded that "Petitioner was require [sic] to follow the PCRA procedural rule" despite "severe obstacles," such as abandonment by direct appeal counsel. Pet'r's Objs. 19, 22-23. Although Williamson protests that his PCRA petitions should be considered timely or he should be excused from the timeliness requirement, a state court's decision that a postconviction petition is untimely is "the end of the matter" for purposes of federal habeas. *See Pace v. DiGugliemo*, 544 U.S. 408, 414 (2005). Because Williamson's

PCRA petitions were deemed untimely by the state courts, they do not entitle him to statutory tolling.[1]

   C. **Equitable Tolling**

To merit equitable tolling of the statute of limitations, a habeas petitioner must demonstrate (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. An extraordinary circumstance only warrants equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

Magistrate Judge Hey found limited equitable tolling appropriate here because the "peculiar and confusing series of events understandably frustrated Petitioner's ability to exhaust his claims." R&R, at 12-13. She identified five events in particular that, in tandem, justified equitable tolling: (1) the dismissal of Williamson's direct appeal on January 12, 1995, because his counsel did not file a brief; (2) the trial court's sua sponte order of August 11, 1998, permitting Williamson to file a direct appeal nunc pro tunc; (3) the dismissal of the reinstated direct appeal on October 21, 1999, for failure to file a brief; (4) the Superior Court's reinstatement on September 17, 2002, of Williamson's first PCRA as a result of his second PCRA; and (5) the Superior Court's dismissal of Williamson's first PCRA petition as untimely

---

[1] In *Pace*, the Supreme Court recognized that the timeliness and exhaustion requirements for habeas petitions can create the exact predicament in which Williamson finds himself: "a petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,' and thus that his federal habeas petition is time barred." 544 U.S. at 416. The Court dismissed any concerns about unfairness to petitioners by emphasizing the importance of filing a "protective" habeas petition within the limitations period, even if state court proceedings remain pending: the petitioner can ask the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *Id.* However, Williamson did not do so here.

on June 25, 2004. R&R, at 12. Magistrate Judge Hey recognized that Williamson justifiably could have been confused by this convoluted series of events, and equitably tolled the AEDPA limitations period from its starting date in April 1996 through July 25, 2004, thirty days after the Superior Court affirmed the denial of Williamson's reinstated first PCRA petition as untimely.

Even after equitably tolling the statute of limitations to July 2004, Magistrate Judge Hey correctly found that Williamson's habeas petition is untimely. Williamson failed to exercise due diligence in bringing his claims: even though Williamson knew as of July 2004 that his first PCRA petition was untimely under Pennsylvania law, he failed to file his habeas petition for another ten years.

Williamson offers no excuse for his ten-year delay. Many of his objections focus on the period between his conviction in 1995 and the denial of his first PCRA as untimely in 2004. For example, Williamson argues that he did not receive proper notice of the dismissal of his direct appeal in January 1995, and that his direct appeal counsel abandoned him.[2] Pet'r's Objs. 7-8. Additionally, he points to his imprisonment in Baltimore, without access to Pennsylvania law resources, from 1994 through 1998, as justification for his failure to comply with the timeliness requirements. Pet'r's Objs. 22. These arguments miss the point, because Magistrate Judge Hey already accounted for these complications in tolling the statute from 1996 through 2004.

If the statute is tolled until July 25, 2004, as Magistrate Judge Hey recommended, the limitations period would run for one year, through July 25, 2005. Williamson does not explain his failure to file in that time period. He presents objections based on subsequent events, such as his complaint that the prison mailroom did not submit his notice of appeal of his fourth PCRA petition after it was dismissed on August 17, 2012, and the two-year delay in reviewing his fifth

---

[2] Although these events occurred in 1995, Williamson inexplicably argues that they entitle him to equitable tolling from 1995 until October 15, 2012. Pet'r's Objs. 7-8.

PCRA petition, both of which Williamson argues entitle him to tolling from August 17, 2012 through October 15, 2014. This time period and the objections based upon it are irrelevant to the one-year period between July 2004 and July 2005, the period Williamson had to bring his habeas claims if equitable tolling applies. Williamson offers no explanation or excuse for his failure to file a habeas petition in that time frame. Williamson does not suggest that he pursued his rights diligently during that time[3] and points to no extraordinary circumstance that stood in his way and prevented timely filing before July 2005, so he is not entitled to further equitable tolling beyond what Magistrate Judge Hey applied. Even giving Williamson the benefit of the doubt and applying equitable tolling until July 2004, the limitations period expired in July 2005, and his petition is still untimely by nine years.

  D. **Actual Innocence**

Williamson seeks to overcome the statute of limitations through a gateway claim of actual innocence, supported primarily by the 2012 affidavit of an alleged alibi witness. Although actual innocence, if proved, acts as a "gateway" through which a petitioner may pass beyond an expired statute of limitations to have his claim considered on the merits, the Supreme Court has stated that "tenable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, 569 U.S. 383 (2013). To establish an actual innocence claim, a petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* A court evaluating an actual innocence claim must evaluate the evidence under the *Schlup* standard, which requires "new reliable evidence—

---

[3] Williamson does not seem to have taken any steps to pursue his rights during July 2004 and July 2005, even on the state level: the record reveals no action by Williamson after the June 25, 2004 dismissal of his PCRA petition until January 11, 2006, when he filed his third PCRA petition.

7
110217

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Williamson has not produced new evidence, so his actual innocence claim fails. He offers the July 13, 2012 affidavit of Hughie Johnson, an alleged alibi witness who attests that Williamson was with him in Houston from June through September 1987, so Williamson could not have committed the murder in Philadelphia in July 1987. Although Williamson argues that "new evidence" includes "newly presented evidence," the Third Circuit Court of Appeals considers evidence "new" under *Schlup* only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence, except in situations where evidence was not discovered because of ineffective assistance of trial counsel.[4] *See Houck v. Stickman,* 625 F.3d 88, 93–94 (3d Cir. 2010); *Pirela v. Dist. Attorney of the Cty. of Philadelphia*, No. CIV.A. 00-5331, 2014 WL 2011536, at *5–6 (E.D. Pa. May 16, 2014). Specifically, evidence of an alibi is not new evidence when the alibi is known by the petitioner at the time of trial. *See Cruz v. Wetzel*, No. CV 14-2681, 2015 WL 6855637, at *5 (E.D. Pa. July 30, 2015), *adopted*, No. CV 14-2681, 2015 WL 6811324 (E.D. Pa. Nov. 6, 2015), *cert. of appealability denied* (May 31, 2016) (finding that affidavits submitted by petitioner to establish alibi did not satisfy *Schlup*). Williamson freely admits that he knew that Hughie Johnson was an

---

[4] One district court in this Circuit has recognized a circuit split over what counts as "new" evidence under *Schlup*: while the Third and Eighth Circuits require newly discovered evidence, or evidence that could not have been discovered through reasonable diligence, the Seventh and Ninth Circuits view "new" evidence as evidence not "presented" at trial. *See Phlipot v. Johnson*, No. CV 14-383-RGA, 2015 WL 1906127, at *4 n.6 (D. Del. Apr. 27, 2015). The case Williamson cites in support of his position, *U.S. v. Davies*, does not control because the court in that case did not decide the meaning of "new" evidence, but merely referenced Seventh and Ninth Circuit decisions accepting "newly presented" evidence. 394 F.3d 182, 191 (3d Cir. 2005) ("We need not weigh in today on the 'newly presented' versus 'newly discovered' issues because, as we note below, we write in the context of a claim that a post-conviction Supreme Court decision has held that the statute of conviction does not reach the petitioner's conduct.").

alibi witness at the time of his trial and identified him as a witness to be investigated. Pet'r's Objs. 9. He tries to excuse his delay by stating that Johnson had moved from Houston to Florida and was incarcerated for seventeen of the twenty years since Williamson's trial. While this might explain Williamson's delay in presenting Johnson's affidavit, it does not explain his delay in presenting his alibi, of which he was fully aware at the time of trial. Therefore, the Johnson affidavit is not new evidence sufficient to ground an actual innocence claim.

Even if the affidavit did qualify as new evidence, Williamson's actual innocence claim would fail because he cannot establish that no reasonable juror could find him guilty.

To determine whether a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Phlipot v. Johnson*, No. CV 14-383-RGA, 2015 WL 1906127, at *4 (D. Del. Apr. 27, 2015) (citing *House v. Bell,* 547 U.S. 518, 538 (2006)). In doing so, a court "may consider how the timing of the submission [of actual innocence] and the likely credibility of the affiant[ ] bear on the probable reliability of that evidence." *Id.* (citing *Schlup,* 513 U.S. at 332). A petitioner's actual innocence claim will fail where the new evidence "does not eliminate the possibility that the crime occurred as set forth by the prosecution at trial." *Prosdcocimo v. Beard*, No. CIV.A. 08-1500, 2010 WL 5186641, at *4 (W.D. Pa. Nov. 3, 2010), *adopted*, 2010 WL 5186618 (W.D. Pa. Dec. 14, 2010), *aff'd sub nom. Prosdocimo v. Sec'y, Pennsylvania Dep't of Corr.*, 458 F. App'x 141 (3d Cir. 2012). *See also Albrecht v. Horn,* 485 F.3d 103 (3d Cir. 2007) (holding that new fire science expert opinion that fire could have been accident did not rule out the possibility that the fire was set intentionally and thus did not support actual innocence claim for petitioner convicted of murder); *Cruz*, 2015

WL 6855637 at *6 (rejecting actual innocence claim based on alibi affidavits where witness testimony linked petitioner to murder).

Williamson's claim fails to meet the exacting standard for actual innocence. He presents an affidavit of an alleged alibi witness twenty years after the trial and twenty-five years after the crime, a delay which casts doubt on the reliability of the affidavit. *See Taylor v. Illinois*, 484 U.S. 400, 414 (1988) ("It is ... reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed."); *Cruz*, 2015 WL 6855637, at *6 (finding alibi affidavits unreliable when presented ten years after conviction). Additionally, the affidavit does not eliminate the possibility that the crime occurred as presented by the prosecution, and a reasonable jury could still find adequate evidence to convict. As Magistrate Judge Hey highlighted, the victim's girlfriend, who was an eyewitness to the crime, described the events and the shooter in detail within minutes of the attack and identified Williamson as the shooter. Although Williamson attempts to relitigate the evidence against him at trial, Pet'r's Objs. 13-14, he cannot demonstrate that, in light of all the evidence on the record, a reasonable jury could not have convicted him. Therefore, his actual innocence claim fails, and his petition is time barred.

## V. CONCLUSION

Magistrate Judge Hey correctly concludes that the instant petition for writ of habeas corpus is untimely. This Court therefore adopts the findings and conclusions in the Report and Recommendation and follows the recommendation to deny the habeas petition as untimely, and to deny Williamson's request for an evidentiary hearing. There is no basis to issue a certificate of appealability.

A separate Order will be issued.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge